**STATE of Delaware, Petitioner Below, Appellant,**

v.

**Nathaniel WILSON, Respondent Below, Appellee.**

Supreme Court of Delaware.

Submitted: June 28, 1988.
Decided: July 14, 1988.

Richard E. Fairbanks, Jr. (argued), Chief of Appeals Div., Rosemary K. Killian and Andre Beauregard, Deputy Attys. Gen., Dept. of Justice, Wilmington, for appellant.

Bernard J. O'Donnell (argued), and Brian J. Bartley (argued), Asst. Public Defenders, Wilmington, for appellee.

Patricia Tate Stewart, Director of Legal Services, Family Court of State of Del., Wilmington, for amicus curiae Family Court of State of Del.

Before CHRISTIE, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice.

This is an appeal by the State of Delaware, acting through the Attorney General, from a decision of the Family Court, which dismissed a juvenile delinquency proceeding because the Attorney General failed to appear before a master of the Family Court to present evidence in support of the delinquency petition. The Family Court

ruled that, under applicable Family Court Rules, the Attorney General was required to prosecute all delinquency petitions before Family Court masters and, upon the failure of the Attorney General to appear, the delinquency petition should be dismissed. The Attorney General appealed the decision to the Superior Court, and later transferred the appeal to this Court which has jurisdiction under 10 *Del.C.* § 962(b).[1] The Office of the Public Defender, who represented the respondent in the Family Court, argues in support of the decision of the Family Court. Additionally, the Family Court through its Staff Attorney has been permitted to file a brief, amicus curiae, in defense of the Family Court ruling.

The State contends the Family Court rule which purports to require the Attorney General to participate in proceedings before masters is in conflict with statutory law and, in addition, encroaches upon the constitutional authority of the Attorney General to determine the manner and method of prosecution. Alternatively, the Attorney General argues that it was an abuse of discretion for the Family Court to require the Attorney General to prosecute delinquency cases before masters in the absence of necessary funding from the General Assembly.

 We conclude that, under the unusual facts present in this case, the Attorney General was required to prosecute the delinquency petition before the master. Accordingly, we affirm the result reached in the Family Court. We disagree, however, with the rationale underlying that decision and hold that the Family Court may not, by court rule, require the appearance of the Attorney General in all proceedings before masters or preclude the appearance of private petitioners before masters in delinquency proceedings.

## I

The facts underlying the initiation of the delinquency petition in the Family Court are undisputed. On May 27, 1987, the mother of an eleven year old alleged victim appeared before a Justice of the Peace to file a complaint against Nathaniel Wilson,[2] aged twelve, for assault. The Justice of the Peace issued a warrant which was executed by the Delaware State Police and also referred the matter to the Family Court which has exclusive original jurisdiction over delinquency proceedings. On June 19, 1987, a deputy attorney general prepared and filed with the Family Court a document entitled: "PETITION ALLEGING DELINQUENCY" which recited in pertinent part: "Petitioner, the Attorney General of the State of Delaware, by the undersigned Deputy Attorney General, upon a Sworn Complaint previously filed, alleges that the above named child appeared to have committed a delinquent act as defined by 10 Delaware Code, Section 901...." Under a designation procedure established by the Chief Judge of the Family Court, delinquency petitions of a minor nature are referred to masters. In due course a Family Court master conducted an arraignment on August 25, 1987, and thereafter scheduled a fact-finding hearing.

At the fact-finding hearing before the master on November 13, 1987, the respondent-juvenile appeared with counsel. The alleged victim, the victim's mother (the original complainant) and the arresting police officer were also present but a deputy attorney general was not. Prior to the swearing of any witness the respondent's attorney moved to dismiss the delinquency charge because of the failure of the Attorney General to appear, "as required by Family Court Rules." The master deferred the motion to dismiss for judicial considera-

---

1. The Attorney General, invoking this Court's supervisory powers pursuant to art. IV, § 13 of the Delaware Constitution, has also sought to stay the enforcement of the Family Court rule which requires the Attorney General to prosecute all delinquency petitions. Although the stay was denied, *State v. Nathaniel H.*, Del.Supr., No. 202, 1988, Christie, C.J. (June 3, 1988) (Or-

der), we agreed to consider this matter on an expedited basis to address the policy concerns which affect this and other similarly situated cases pending in Family Court.

2. This is a pseudonym adopted by the Court pursuant to Supreme Court Rule 7(c).

tion pursuant to her general power to make recommendations. 10 *Del.C.* § 913.

Although the Attorney General had declined to appear before the master, a deputy attorney general filed a written submission to a Family Court judge in opposition to the motion to dismiss. Essentially, the State argued that because a delinquency proceeding is a civil matter under Delaware statutory law (10 *Del.C.* § 921), the Family Court Criminal Rules do not apply and the Attorney General has the option to decline to participate in such proceedings. The Family Court, in rejecting the State's contention, ruled that delinquency proceedings were listed under the Family Court's civil jurisdiction as "a label of convenience." The Family Court concluded that when the essential nature of a delinquency proceeding is examined, particularly the sanctions imposed upon a juvenile after a determination of delinquency, the matter must be viewed as criminal. The Family Court held that the enactment of the new Family Court Criminal Rules [3] "marked a change in the role of the Attorney General in Family Court" and mandated, in effect, that he conform his conduct in delinquency proceedings to that required in criminal proceedings. The result, it was ruled, was to remove from the Attorney General the option or discretion to permit private prosecution of delinquency proceedings, even before masters. The failure of the Attorney General to participate in such proceedings, the Family Court ruled, was fatal to their prosecution and accordingly granted the motion to dismiss.

## II

In this appeal the Attorney General disputes the power of the Family Court, through its rule-making authority, to require public prosecution of delinquency petitions to the exclusion of private petitioners and in derogation of the Attorney General's constitutional prerogatives. It is necessary at the outset that we examine the nature of delinquency proceedings under Delaware law in order to determine whether the Attorney General is required to assume a prosecutorial role in that process.

If the delinquency proceeding is viewed from its intended effect upon the subject-juvenile the emphasis is clearly upon its nonpenal and rehabilitative goals. State policy in this respect has been unequivocally expressed. Section 931 of Title 10 of the Delaware Code provides that "no child shall be deemed a criminal by virtue of an allegation or adjudication of delinquency...." In accord with the language of section 931 this Court has stated:

> The proceedings against a child [charged in Family Court with a violation of State law] are not criminal in concept or in practice. Indeed, the child is not even charged with a 'crime,' no matter what the conduct. See 10 *Del.C.* § 931. In the Family Court the charge is a general one of 'delinquency.' § 921(1), (2)a.... State policy in a proceeding against a child in the Family Court is to make it entirely a part of the Court's 'civil jurisdiction,' § 921....

*G.D. v. State,* Del.Supr., 389 A.2d 764, 765 (1978) (quoting *State v. J.K.,* Del.Supr., 383 A.2d 283, 286 (1977), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1882, 56 L.Ed.2d 392 (1978)).

In the creation of the Family Court, the General Assembly recognized the unique role that Court is called upon to play through the application of its civil processes in the resolution of offenses committed by children. Under 10 *Del.C.* § 921(2)(a) the Family Court is given original exclusive civil jurisdiction over "[a]ny child charged in the State with delinquency or by having committed any act or violation of any law of this State or any subdivision thereof...." The statutory policy is not

---

3. Family Court Criminal Rule 7(a), which became effective on January 1, 1987, as part of a general revision of Family Court civil and criminal rules provides:

> (a) **Information and Petition.** Except where otherwise provided by the Constitution of this State, or by statute, an offense within the jurisdiction of the Family Court alleged to have been committed by an adult shall be prosecuted by an Attorney General's information and such an offense alleged to have been committed by a child shall be prosecuted by an Attorney General's petition.

without exception, however, since certain serious felonies, or a determination of non-amenability, may result in formal criminal prosecution as an adult. 10 *Del.C.* § 938.

Notwithstanding the stated societal purpose of delinquency adjudication in a civil setting, it is recognized that certain safeguards which attend the criminal process also inure to the benefit of the respondent-juvenile. In a series of cases the United States Supreme Court has outlined the due process factors protective of the juvenile. In *In re Gault*, 387 U.S. 1, 30–31, 87 S.Ct. 1428, 1445–1446, 18 L.Ed.2d 527 (1967) due process in a juvenile delinquency proceeding was held to embrace: adequate written notice of the charges pending against the juvenile; advice as to the right to counsel, retained or appointed; the right to confront and cross-examine adverse witnesses; and the privilege against self-incrimination. Again in *In re Winship*, 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) the Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Subsequently, in *Breed v. Jones*, 421 U.S. 519, 532, 95 S.Ct. 1779, 1787, 44 L.Ed.2d 326 (1975) the Court held that the double jeopardy clause of the fifth amendment is implicated during an adjudicatory hearing in juvenile court.

Significantly, the United States Supreme Court has limited the process due to a juvenile by holding that the right to trial by jury does not apply to the adjudicatory phase of a juvenile court delinquency proceeding. *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (plurality opinion). The Court in *McKeiver* reasoned that the issue as to whether a juvenile has the right to a jury trial during a juvenile delinquency proceeding must be resolved by ascertaining the "precise impact of the due process requirement." *Id.* at 542, 91 S.Ct. at 1984. In assessing the impact of the jury trial on the juvenile delinquency process the Court concluded:

> There is a possibility, at least, that the jury trial if required as a matter of con-

stitutional precept, will remake the juvenile proceeding into a full adversary process and will put an effective end to what has been the idealistic prospect of an intimate, informal protective proceeding.

\* \* \* \* \* \*

> If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial.

*Id.* at 546, 551, 91 S.Ct. at 1986, 1989.

As the foregoing authorities attest, precise characterization of a delinquency proceeding as either a "civil" or "criminal" action for all purposes is difficult. Instead, the United States Supreme Court has placed the juvenile delinquency proceeding in a "hybrid" category, balancing the rights of the accused juvenile against the societal interest in continuing the special guidance and protective treatment contemplated by the juvenile court system. *See id.* at 546–551, 91 S.Ct. at 1986–1989; *see also Commonwealth v. Johnson*, Pa.Super., 234 A.2d 9, 18 (1967).

■ The Family Court, in requiring participation of the Attorney General in every phase of the delinquency proceeding, emphasized the criminal aspects of delinquency matters. This seems, however, an overly simplistic approach. In compelling the appearance of the Attorney General through the application of a criminal label to a delinquency proceeding the Family Court failed to consider the significance of the due process concerns raised by the precise question before the court. As the respondent-juvenile now concedes, a juvenile's right to due process is not offended by the Attorney General's failure to prosecute every delinquency petition before a master in the Family Court. Under 10 *Del.C.* § 913(c) every juvenile who has appeared before a master may seek de novo review of any adverse recommendation. Such review provides the juvenile with the full opportunity to secure whatever perceived benefits may flow from the presence of a prosecutor in a juvenile delinquency

proceeding.[4] To require the Attorney General to prosecute every delinquency petition would arguably hinder the Family Court's effort to emphasize the civil nature of the delinquency proceeding with its corresponding flexibility, e.g., the use of the master to make initial recommendations which do not become binding without the consent of the parties.

We agree with the State's contention that Family Court Criminal Rule 7 cannot be construed to require the Attorney General to prosecute all delinquency petitions before masters nor can the Rule be applied to preclude private petitioners from initiating and presenting delinquency petitions before masters in the Family Court. The language of 10 *Del.C.* § 932, even before its recent proposed amendment,[5] admits of no other result and to the extent the rule is inconsistent with the statute, the statute will prevail. *Haug v. State*, Del.Supr., 406 A.2d 38, 42 (1979).

■ Under the facts of this case, however, the Attorney General is deemed to have initiated the prosecution through the filing of a formal petition signed by a deputy attorney general. Having assumed the role of prosecuting petitioner, and having displaced the private petitioner who filed the complaint, the Attorney General is required to pursue the prosecution through appearance before the master and the presentation of evidence.[6] Only the Attorney General can prosecute his own petition, even before a master. A court may, through its inherent authority to regulate the status of those who appear before it in a representative capacity, preclude the privatization of prosecutions initiated by a public prosecutor. This result is simply a corollary of the principle that the courts possess the exclusive right to govern the practice of law. *In re Green*, Del.Supr., 464 A.2d 881, 885 (1983).

■ Thus we agree with the Family Court that where the Attorney General initiates the petition in the name of the State, he must assume responsibility for the further prosecution of that petition before the Family Court and if the petition is referred to a master the Attorney General's duty to prosecute extends to that level as well. The failure of a deputy attorney general to appear before a master to prosecute the State's own petition, as in this case, is properly subject to a motion to dismiss. On this narrow ground, therefore, we affirm the ruling of the Family Court.

### III

Although our ruling affirming the result reached in the Family Court disposes of the specific question of whether the motion to dismiss was correctly granted, our task is not ended. Because of the competing policy arguments advanced by the Attorney General and the amicus concerning the expansive role undertaken by Family Court masters in cases of this type, we proceed to address other concerns implicated in this appeal.

■ The use of masters in the Family Court is authorized by statute. 10 *Del.C.* § 913. Masters, however, are not judges but are instead ministerial officers who are appointed by, and hold office at the pleasure of, the Chief Judge of the Family

---

4. There is apparently no dispute between the Attorney General and the Family Court concerning the manner and method of prosecuting juveniles before judges of the Family Court. It is the Attorney General's practice and policy that all juvenile delinquency petitions, public or private, to be heard by judges be prepared and prosecuted by a deputy attorney general.

5. *Legislation amending 10 Del.C.* § 932 to give the Attorney General discretion to appear in delinquency proceedings has been approved by the 134th General Assembly and is awaiting action by the Governor.

6. Although vested with considerable discretion concerning the initiation of prosecution, once the Attorney General invokes the adjudicatory process he may not surrender the lawyer's role. The prosecutor's unique role is expressed in the American Bar Association's Standards for Criminal Justice as follows:

**Standard 3–2.1. Prosecution authority to be vested in a public official**

The prosecution function should be performed by a public prosecutor who is a lawyer subject to the standards of professional conduct and discipline.

ABA *Standards for Crim. Just.*, Standard 3–2.1 (2nd ed. 1986 Supp.).

Court. 10 *Del.C.* § 913(a). The exercise of judicial authority under the Delaware Constitution, whether in courts created by the constitution or by statute, is limited to those persons who have been appointed by the Governor and confirmed by the Senate. *See* Del. Const. art. IV, §§ 1, 3; *In re Smyth's Petition*, Del.Super., 176 A.2d 378, 380 (1961). A Family Court master "may hear any matter properly before him" upon request of the Chief Judge, 10 *Del.C.* § 913(b) but judges, whether in the exercise of rule-making power or otherwise, may not delegate their judicial authority to nonjudges. *A.L.W. v. J.H.W.*, Del.Supr., 416 A.2d 708, 711 (1980). As the statute makes clear, the master's authority is limited to issuing written findings of fact and recommendations. 10 *Del.C.* § 913(b). While he may regulate the proceedings before him and issue legal process to compel attendance by parties or witnesses, he has no power to enter any order which determines the rights of the parties or terminates the jurisdiction of the Family Court. *A.L.W. v. J.H.W.*, 416 A.2d at 711.

The limiting provisions of 10 *Del.C.* § 913 are consonant with the general view of the functioning of masters in the judicial mechanism. In describing the role of masters in juvenile delinquency proceedings, the Maryland Court of Appeals ruled that "[m]asters are not judges and, therefore, are not vested with any part of the judicial power of the State." *In re Anderson*, 272 Md. 85, 321 A.2d 516, 527 (1974) *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed. 2d 667 (1975). Simply stated, a master has no independent power of adjudication. In this respect a master's authority is comparable to that of a court-appointed referee whose limited role has been authoritatively described:

> Without confirmation and adoption by the court, the acts of the referee have no force or validity whatever, and nothing can originate before him and nothing can terminate with or by his decision, the entire proceeding being an exercise of judicial power by the court.

66 Am.Jur.2d, *References* § 1 (1973).

The nonadjudicatory effect of the master's functioning is illustrated by the broad de novo review process imparted by 10 *Del.C.* § 913(c) which provides:

> (c) A review de novo by an Associate Judge designated by the Chief Judge, shall be allowed, provided any above named person petitions in writing for the same within 15 days from the date of a Master's announcement, as aforesaid, of his findings and recommendations.

> In the event that no such hearing is requested within the 10 day period aforesaid, the findings and recommendations of the Master, unless they be disapproved in writing by an order of the Chief Judge, shall become the judgment of the Court, with rights of appeal reserved to all parties.

The phrase "above named persons" refers to those individuals to whom the master is required to announce his conclusion as provided in section 913(b) and includes "the parties ... their attorneys" or in the case of a hearing, "shall relate to a child, then to a custodian, adult friend, or attorney of the child...." Although awkwardly phrased, the clear intendment of this language is to afford any party to a hearing before a master, including those initiated through delinquency petitions, the right to seek review before a judge. This right afforded all parties, including the petitioner in a delinquency proceeding, is envisioned by section 913(c) and is consistent with both the nonadjudicatory nature of the master's fact-finding process and the constitutional limitations discussed below.

 The right to de novo review of a master's findings and recommendations afforded under section 913(b) is constitutionally restricted in delinquency proceedings. In *Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978) the United States Supreme Court, in approving master processing in juvenile delinquency proceedings, emphasized that while both the State and the juvenile may seek review before a judge of a master's recommendation, only the juvenile may seek review de novo. To permit de novo review by the State, it was ruled, would afford the prosecution a second opportunity to present evi-

dence against the juvenile contrary to the protection against double jeopardy. However, the Court concluded that the Maryland system under review did not offend the right against double jeopardy because "an accused juvenile is subjected to a single proceeding which begins with a master's hearing and culminates with an adjudication by a judge." *Id.* at 215, 98 S.Ct. at 2706. Thus, while the State may seek review of a master's recommendation through the taking of exceptions and post-trial briefing and argument before a judge, it may not present additional evidence. *Id.* at 217, 98 S.Ct. at 2707. Similarly, where the Attorney General permits a private petitioner to pursue prosecution of a privately initiated delinquency petition before a master, neither the State nor the private petitioner may thereafter seek review before a judge for the purpose of offering new or additional evidence. This result is mandated by the *Swisher* holding that, for double jeopardy purposes, the master's hearing of a juvenile delinquency petition followed by judicial review must be a unitary process.

In the course of this appeal the respondent and the amicus have sought to justify the need for public prosecution before masters because of the authority exercised by masters under Family Court Criminal Rule 49[7], which also became effective on January 1, 1987. This rule provides:

### RULE 49. MASTERS

**(a) Appointment; Qualifications.** The Chief Judge shall appoint, commission and set salaries of qualified persons to act as masters in the Court, all of whom shall hold office at the pleasure of the Chief Judge, shall be residents of the State for at least 5 years immediately preceding their appointment.

**(b) Authority.**

(1) Masters may hear and determine any matters properly before them as the Chief Judge may direct and may order the issuance of legal process to compel the attendance of necessary parties and witnesses, set bail, determine and punish civil contempt, render and enforce judgments, including default judgments, and assess fees and costs.

(2) The findings and recommendations of a master shall become the judgment of the Court, with rights of appeal reserved to all parties, unless they be disapproved in writing by an order of the Chief Judge or designee or unless application for a review de novo has been made in writing within 15 days from the date of a master's announcement of decision.

**(c) Duties.** A master shall inform all parties unrepresented by counsel that he or she is a master in the Court and shall advise them of the provisions of Rule 49(b)(2) and Rule 49(d). As soon after announcement of decision is practicable, the master shall transmit to the Chief Judge or such associate judge as the Chief Judge designates all papers and records relating to the case.

**(d) Reviews de Novo; Appeals.** Any defendant in an action before a master who desires to have the matter reheard by a judge of the Court shall, within 15 days after the master announces decision, file with the Court a written petition requesting trial de novo before a judge. Any party authorized by law to do so may appeal the master's judgment to the appellate court.

When this rule is juxtaposed against section 913 certain inconsistencies are apparent. The rule purports to confer upon masters the authority to "set bail, determine and punish civil contempt, render and enforce judgments, including default judgments and assess fees and costs." Such powers are not conferred under section 913, *Haug v. State*, 406 A.2d at 42, and since masters are not judicial officers, may not be exercised incident to inherent judicial authority. *A.L.W. v. J.H.W.*, 416 A.2d at 711.

Rule 49 is also at variance with the master's authority as defined in section 913 to the extent the rule treats the findings and recommendations of a master as "the judg-

---

7. Family Court Civil Rule 53, which describes the authority of masters in civil proceedings in the Family Court, essentially duplicates its criminal counterpart.

ment of the Court, with rights of appeal reserved to all parties." The statutory design is exactly the opposite. The master's findings are simply recommendations which do not become judgments until *after* the review process has been satisfied. 10 *Del.C.* § 913(b), (c). Finally, we note the language in subsection (d) of the rule which attempts to limit the right of review de novo to "any defendant." As previously ruled, the statutory right of review is available to any party to a proceeding before a master, including a petitioner, private or public, in a delinquency proceeding, subject to the double jeopardy limitation of *Swisher v. Brady*. The rule's restriction on that right of appeal is contrary to the statutorily granted right of review and is at clear variance with the limited functioning of the master process.[8]

We recognize the importance of masters in assisting the Family Court to cope with its large caseload. We also acknowledge that a rule-based expansion of masters' authority originated in a general revision of the Family Court's civil and criminal rules to conform them with practices and procedures in other state courts.[9] However compelling the need, the use of masters to perform duties which are essentially judicial, and in excess of statutory authority, cannot be reconciled with constitutional standards. The Family Court is accordingly directed to adopt procedures which limit the operation of masters consistent with this opinion. The Court is directed to give particular attention to the need for affirmative judicial action, not simply inaction, before recommendations of masters can become judgments of the court. *See In re Anderson*, 321 A.2d at 527.

Since we have expressly determined that the recent revisions in the Family Court Rules governing motions were adopted in good faith and without objection by this Court the effect of this ruling will not extend to a recommendation of a master which has become final prior to the date of this opinion.

For the reasons stated the judgment of the Family Court is AFFIRMED. In addition, pursuant to this Court's supervisory authority, Del. Const. art. IV § 13, the Family Court is directed to adopt appropriate rules consistent with this opinion.

**8.** We also note the use in Rule 49 of a 15 day period in which to seek a review de novo. This period may not be consistent with the ambiguous language of section 913(c) which specifies a right of review within "15 days from the date of the Master's announcement" while also referring to the "10 day period aforesaid" for disapproval of the master's findings and recommendation by the Chief Judge. We direct the attention of the General Assembly to the need to correct the obvious ambiguity in the time periods specified in section 913(c).

**9.** The general revision of Family Court Rules which became effective January 1, 1987, was

accomplished after extensive opportunity for review by members of the Bar, including representatives of the Attorney General, and the Family Court judiciary and staff. The proposed revisions were also submitted to this Court for review under the provisions of art. IV, § 13(1) of the Delaware Constitution. This Court's subsequent indication that it had "no objection" to the adoption of the proposed rules does not, of course, foreclose later interpretation and construction of the rules in the context of an adversarial proceeding.