**Bruce E. REDDEN, Respondent Below, Appellant,**

v.

**Sandra McGILL, Petitioner Below, Appellee.**

Supreme Court of Delaware.

Submitted: Oct. 21, 1988.
Decided: Oct. 26, 1988.

---

Bruce E. Redden, pro se.

T. Henley Graves, Fuqua and Graves, Georgetown, for appellee.

Before HORSEY, WALSH and HOLLAND, JJ.

PER CURIAM:

This is an appeal from a child support order entered by a master in the Family Court. The appellant-respondent, Bruce E. Redden, claims a denial of due process because of the master's refusal to grant a continuance so that respondent could retain counsel. Appellant docketed his appeal in this Court without having sought *de novo* review of the master's decision by a Family Court judge. Pursuant to Supreme Court Rule 29(b), appellant was directed to show cause why the appeal should not be dismissed for lack of jurisdiction, in light of this Court's recent decision in *State v. Wilson*, Del.Supr., 545 A.2d 1178 (1988). In his answer appellant contends that the Family Court did take "affirmative judicial action" by placing the "reviewed" stamp of the Chief Judge on the master's recommendation and that such action is consistent with this Court's decision in *Wilson*. We disagree with appellant's argument and do not reach the merits of his due process claim. We conclude that a jurisdictional barrier precludes consideration of this appeal and, *sua sponte*, dismiss the appeal for lack of jurisdiction.

I

The procedural background of this appeal appears in the September 17, 1987, decision of the Family Court master. The respondent has been subject to a child support order since 1983. The child's mother, the petitioner in the Family Court, sought an increase in the amount of weekly support as well as collection of arrearage. The matter was scheduled for hearing before a master. Two days before the scheduled hearing the respondent sought a continuance to obtain counsel. The master denied the continuance upon opposition of petitioner's counsel. The respondent did not appear on the date of the hearing, but the master proceeded to hear the testimony of the petitioner. At the conclusion of the hearing, the master made certain factual findings and made the following oral disposition, later reduced to writing:

> Therefore, I find and recommend that Respondent's order be modified to $65.00 per week plus $20.00 on arrears of $834.24. Further, Petitioner shall pay for uncovered medical bills, except for extraordinary expenses. In addition, a wage attachment shall issue for $85.00 per week and Respondent shall make payments on his own until the wage attachment takes effect.
>
> Respondent shall pay Petitioner's attorney's fees in the amount of $131.25 by October 25, 1987, which shall be payable to Mr. Graves directly and which shall be enforceable and collectable by him.

The master's disposition form concluded with the following printed entry:

> The parties are advised of their right to a Review de Novo of a Master's decision before a Judge provided they so petition within fifteen (15) days of the date of this decision; however; the Master's decision is effective immediately as a Court Order, pending review, unless a stay is granted by a Judge of this Court.

The master's order although announced in open court on September 17, 1987, was not mailed until September 24, 1987. The order also contains the following stamp "REVIEWED SEP 25 1987 RDT".[1] Respondent did not attempt to secure a review *de novo* before a judge of the Family

---

1. RDT are the initials of the Chief Judge of the Family Court. We assume the stamp was placed on the master's findings and recommendations by, or at the direction of, the Chief Judge.

Court, as authorized by 10 *Del.C.* § 913(c),[2] but filed an appeal in this Court on October 14, 1987.

## II

In *State v. Wilson*, 545 A.2d 1178, this Court examined at length the authority of masters in the Family Court under pertinent statutory and constitutional standards. Although *Wilson* arose in the context of an appeal of a delinquency proceeding which originated before a master and was subsequently reheard before a Family Court judge, its basic teaching extends to the question of appealability of master's orders:

Simply stated, a master has no independent power of adjudication. In this respect a master's authority is comparable to that of a court-appointed referee whose limited role has been authoritatively described:

"Without confirmation and adoption by the court, the acts of the referee have no force or validity whatever, and nothing can originate before him and nothing can terminate with or by his decision, the entire proceeding being an exercise of judicial power by the court."

*Id.* at 1184, (quoting 66 Am.Jur.2d, *References* § 1 (1973)).

■ In *Wilson* this Court also emphasized the need for the Family Court to limit the functioning of masters with respect to the final determination of the rights of the parties. To repeat, there is a "need for affirmative judicial action, not simply inaction, before recommendations of masters can become judgments of the Court." *Id.* at p. 1186. Without the interposing of a judge, a master's ruling cannot become determinative of the rights of the parties, nor can it provide the basis for appellate review.

The jurisdiction of this Court to hear direct appeals from the Family Court is both constitutionally and statutorily rooted. Art. IV, § 11 of the Delaware Constitution specifically provides for review by the Supreme Court of decisions of the Court of Chancery and the Superior Court. Del. Const. art. IV, § 11. Art. IV, § 11(8) also permits this Court "(t)o exercise such other jurisdiction by way of appeal, writ of error or of certiorari as the General Assembly may from time to time confer upon it." *Id.* at (8).

The General Assembly has granted this Court appellate jurisdiction over the Family Court, through a series of statutory enactments. In the area of divorce and annulment, this Court exercises the appellate jurisdiction it formerly possessed with respect to the Superior Court. 13 *Del.C.* § 1522(a)(3). Later, appellate jurisdiction was conferred over termination of parental rights, 13 *Del.C.* § 1109, and adoption, 13 *Del.C.* § 917(a). Effective July 13, 1987, this Court was authorized to receive appeals from "all civil proceedings" in the Family Court which had the effect of rendering support, custody and visitation orders directly appealable to this Court. 10 *Del.C.* § 960(a).

The appellate jurisdiction conferred on this Court by 10 *Del.C.* § 960(a) is restricted to "any order, ruling, decision or judgment of the Court" in civil proceedings which were initiated in the Family Court. Of necessity, the term "Court" must refer to the ruling or decision of a judge in a cause before him. To hold otherwise is to accord to the findings and recommendations of the master the character of a judicial act. Such a view would be contrary to our express holding in *Wilson* that masters are not judicial officers.

Although the language of 10 *Del.C.* § 913(c), particularly the time references, is

---

**2.** 10 *Del.C.* § 913(c) provides:

(c) A review de novo by an Associate Judge designated by the Chief Judge, shall be allowed, provided any above named person petitions in writing for the same within 15 days from the date of a Master's announcement, as aforesaid, of his findings and recommendations.

In the event that no such hearing is requested within the 10 day period aforesaid, the findings and recommendations of the Master, unless they be disapproved in writing by an order of the Chief Judge, shall become the judgment of the Court, with rights of appeal reserved to all parties.

ambiguous as to how a master's findings and recommendations are converted into a judgment of the court where review *de novo* is not sought,[3] it cannot be read to vest power in a master to enter any order which has the effect of a judgment or decree. *Wilson* at 1184. *See A.L.W. v. J.H.W.*, Del.Supr., 416 A.2d 708, 712 (1980). The question of this Court's jurisdiction is one of constitutional dimension and although the General Assembly may expand this Court's authority to receive appeals from statutorily created courts, it may not thereby confer the judicial authority on persons lacking constitutional qualifications. *See Wilson* at 1186.

■ Although section 913(c) appears to provide a method by which a master's findings and recommendations may "ripen" into a judgment through lack of disapproval by the Chief Judge, we find the procedure employed in this case unacceptable. Section 913(c) appears to permit the master's findings and recommendations to become a judgment of the Court "unless they be disapproved in writing by an order of the Chief Judge." 10 *Del.C.* § 913(c). The use of a "Reviewed" stamp, as occurred, hardly satisfies the statutory mechanism. The term "review", as used in an appellate context, refers to the process of consideration not the result. It is not enough that a review takes place, there must be some affirmative action on the part of the reviewing authority which indicates approval, or as section 913 suggests, lack of disapproval, in order for the master's product to achieve the status of a judgment.

■ There is, however, a more fundamental consideration which precludes approval of a mechanical process for review of the master's findings and recommenda-

tion. In order for this Court to discharge its appellate responsibilities it must be supplied with the bases for the decision of the trial court. A decision without reasons borders on the arbitrary and is not subject to meaningful review. This Court has repeatedly cautioned trial courts on the need to supply reasons for their rulings. *See B.E.T., Inc. v. Board of Adjustment of Sussex County*, Del.Supr., 499 A.2d 811 (1985); *Husband M. v. Wife D.*, Del.Supr., 399 A.2d 847 (1979); *Ademski v. Ruth*, Del.Supr., 229 A.2d 837 (1967). In the review process contemplated by section 913(c) the Chief Judge must supply reasons, however, brief, for his approval, or lack of disapproval, of the master's recommendations, before this Court will accept review.[4]

■ We conclude, therefore, that the appellate jurisdiction of this Court over civil proceedings in the Family Court authorized by 10 *Del.C.* § 960 is limited to orders, rulings, decisions or judgments of the judges of that Court. Findings and recommendations of masters which have not been subject to meaningful judicial review, including approval or disapproval with the reasons therefore, are not deemed final judgments of the Family Court. Family Court dispositions failing to meet that standard are not appealable under section 960 and will not be accepted by this Court for review.

The appeal is DISMISSED for lack of jurisdiction.

---

**3.** The impact of the seemingly contradictory time periods in section 913(c) is evident in this case. The "review" by the Chief Judge occurred within ten days of the announcement of the master's decision (but only one day after its mailing to the nonappearing respondent) and within the fifteen day period permitted for review *de novo*.

**4.** Section 913(c) provides that a master's decision may be reviewed *de novo* by an Associate

Judge designated by the Chief Judge. Although section 913(c) refers to disapproval by the Chief Judge only, this judicial function may be performed upon proper designation by an order of the Chief Judge pursuant to his authority to "[e]stablish a procedure for the assignment of cases to the [associate] Judges." 10 *Del.C.* § 908(7).