**PLAYTEX FP, INC., formerly known as Playtex Family Products, Inc., a Delaware corporation, Playtex Services Corp., a Delaware corporation; Playtex Family Products Corporation, a Delaware corporation; Playtex FP Group Incorporated, a Delaware corporation; Playtex, Inc., a dissolved Delaware corporation; International Playtex, Inc., a dissolved Delaware corporation, Plaintiffs,**

**v.**

**COLUMBIA CASUALTY COMPANY, an Illinois corporation; Northwestern National Insurance Company, a Wisconsin corporation; Delaware Insurance Guaranty Association, a non-profit Delaware unincorporated association; National Union Fire Insurance Company, a Pennsylvania corporation; International Insurance Company, an Illinois corporation; AIU Insurance Company, a New York corporation, Defendants,**

**v.**

**ESMARK, INC., a Delaware corporation; Beatrice Companies, Inc., a Delaware corporation; Coca Cola Bottling Company of San Diego, a California corporation, Counterclaim Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: July 26, 1991.
Decided: Sept. 18, 1991.

Walter L. Pepperman, II, James Lawless, IV, Morris, Nichols, Arsht & Tunnell, Wilmington, and William J. McSherry, Jr., Battle Fowler, New York City, and Robert N. Sayler, Covington & Burling, Washington, D.C., and Stephen D. Chakwin, Jr., Playtex, Inc., Stamford, Conn., for plaintiffs.

Irving Morris, Morris and Morris, and Kevin Gross, Rosenthal, Monhait & Gross, P.A., Wilmington, and William H. Briggs, Jr., Rebecca L. Ross, Ross, Dixon & Masback, Washington, D.C., and Julian C. Campbell, Jr., Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant Columbia Cas. Co.

Howard M. Berg, Berg, Bifferato, Tighe & Cottrell, P.A., Wilmington, and Jeffrey J. Bouslog, Oppenheimer, Wolff & Donnelly, St. Paul, Minn., for defendant International Ins. Co., AIU Ins. Co. and National Union Fire Ins. Co.

Stephen P. Casarino, Casarino, Christman & Shalk, Wilmington, and Dion J. Sartorio, Tribler & Orpett, P.C., Chicago, Ill., for defendant Northwestern Nat. Ins. Co.

Nancy E. Chrissinger, Tybout, Redfearn & Pell, Wilmington, for Delaware Ins. Guar. Ass'n.

Gerald G. Saltarelli, Butler, Rubin, Newcomer, Saltarelli & Boyd, Chicago, Ill., for counterclaim defendants Esmark, Inc., and Beatrice Companies, Inc.

## OPINION

DEL PESCO, Judge.

The question of the standard of review to be applied to the Master's decisions has been raised by the parties in their briefs on the crime or fraud issue. Since this issue is preliminary to and independent of the crime or fraud exceptions, and since the result may affect the Master's continuing efforts, it must be promptly decided.

In the Order of Reference (O.R.), dated March 6, 1990, this Court stated that the standard of review for the Special Discovery Master's decisions would follow that of a United States Magistrate:

> ... A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

O.R., at 4, quoting 28 U.S.C. § 636(b)(1)(A). This standard of review was initially adopted by the Superior Court in *Monsanto Co. v. Aetna Casualty and Surety Co.*, Del.Super., C.A. No. 88C–JA–118, slip op. at 2, Poppiti, J. (December 7, 1989).

Magistrates are not appointed and confirmed;[1] however, they are statutorily granted broad discretionary powers:

> (A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judg-

---

1. Federal Magistrates are appointed by the concurrence of a majority of all the Judges in the appointing District Court. 28 U.S.C.A. § 631(a).

ment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

28 U.S.C.A. § 636(b)(1)(A). In circumstances excepted by this section, the magistrate may propose findings of fact and recommendations for the final disposition. 28 U.S.C.A. § 636(b)(1)(B). Such findings are mailed to all parties, and upon receipt, the parties have ten days to file written objections to the magistrate's recommendations. Undisputed portions may be adopted by the Court. Any disputed portion of the recommendation is subject to de novo review by the Judge, who may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C.A. § 636(b)(1)(C).

There is a separate standard for federal masters, who may only be appointed by the court in special circumstances. In non-jury trials, a master may be appointed in matters of account and difficult computation of damages, or where some exceptional condition requires it. If the parties do not file objections and move for a hearing on the master's report, "the court shall accept the master's findings of fact unless clearly erroneous." FED.R.CIV.P. 53(e)(2). Where the parties have applied for action upon the report, however, the "court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." In jury trials, there may be a referral to a master only when the issues are complicated. "The master's findings ... are admissible as evidence of the matters found and may be read to the jury, subject to the ruling of the court upon any objections in point of law which may be made to the report." FED.R.CIV.P. 53(e)(3). In either type of case, the parties

may stipulate that the master's findings of fact should be final, and then only questions of law arising in the report shall be considered by the Court. FED.R.CIV.P. 53(e)(4).

It is clear from comparing magistrates with masters under the Federal system that neither has discretionary authority except as conferred by statute or as stipulated by the parties.

In determining the standard of review to be applied to the decision of a Special Discovery Master in the Superior Court, we must look to the statutory authority granting the power to appoint Special Masters, the Court rules governing their actions, and Delaware precedent. Although the federal standards regarding masters and magistrates are helpful, they are not authoritative.

"The exercise of judicial authority under the Delaware Constitution, whether in courts created by the constitution or by statute, is limited to those persons who have been appointed by the Governor and confirmed by the Senate." *State v. Wilson*, Del.Supr., 545 A.2d 1178, 1184 (1988), citing Del. Const. Art. IV, §§ 1, 3.

The Superior Court is allowed to appoint Masters under 10 *Del.C.* § 567:

The Superior Court may appoint Masters who shall exercise such powers of the Court as shall be designated by the Court. No Master shall conduct jury trials. Masters shall serve at the pleasure of the Court and shall receive such compensation as the Court may determine. The conduct of Masters shall be governed by Court rules.

In response to this enabling statute, the Superior Court adopted Super.Ct.Civ.R. 113–123.

The rule most relevant for determining the correct standard of review for masters is Rule 122. Rule 122 provides that the master is required to prepare a report, not an opinion. The parties have the opportunity to take exceptions to the master's draft report, which the master may then amend. Once the final report is submitted, the parties may make exceptions to the

Court on any exceptions to the draft report which were disallowed by the master and on any changes made from the draft report. In cases where the master heard live testimony in preparing the report, any party may request a hearing by the Court on the final report and the exceptions to it. Where the master did not hear live testimony, the Court is to consider the report and exceptions thereto in making an appropriate order. Nowhere in the Rule is the standard of review for the master's decision specifically defined, but the use of the word "report" and the review procedure suggest that the Master's decisions are meant to be advisory recommendations, not binding judgments.

The Superior Court is not alone in its use of masters. The Court of Chancery has a similar statute. 10 *Del.C.* § 372. In addition, the Superior Court rules governing the use of masters track the previously adopted rules of the Chancery Court. *See* Ch.Ct.R. 135–147. The Master in the Court of Chancery follows the practice of submitting a report for judicial consideration.

Delaware precedent regarding the use of masters is enlightening. The first relevant case is *Caulk v. Municipal Court for City of Wilmington,* Del.Supr., 243 A.2d 707 (1968). Before *Caulk,* the Municipal Court appointed clerks under 10 *Del.C.* § 1721 and had, under statutory authority, allowed clerks to "[i]ssue warrants upon complaint filed in writing, and upon oath or affirmation, in all cases to be returnable before a Judge of the Municipal Court." 10 *Del.C.* § 1724(2). In *Caulk,* the Supreme Court ruled that the "finding of probable cause sufficient to support the issuance of a warrant of arrest is a judicial act required to be made by a neutral and detached judicial officer," *Id.,* at 708, and therefore the Municipal Court's practice of allowing the Clerk of the Municipal Court to issue warrants was an unconstitutional delegation of judicial power. *Id.* Subsequent to this ruling, the General Assembly enacted 10 *Del.C.* §§ 1987–1992, which allows the Governor to appoint Court Commissioners with the consent of a majority of all members elected to the Senate upon request by the governing body in charge of the particular

court. 10 *Del.C.* § 1988. The Court Commissioners are judicial officers with the statutory power to issue warrants in criminal cases and fix and approve bail. 10 *Del.C.* §§ 1987(1), 1990.

On several occasions a practice of the Family Court has been reviewed by the Delaware Supreme Court. In *A.L.W. v. J.H.W.,* Del.Supr., 416 A.2d 708 (1980), the Supreme Court declared that a Family Court rule allowing a master to conduct an uncontested divorce hearing and enter a judgment subject only to a right of appeal was unconstitutional. The Court reasoned that allowing the master to enter a judgment would allow the Family Court to "delegate its judicial power to a Master in violation of the governing statutes." *Id.,* at 711.

A similar result was reached in *State v. Wilson,* Del.Supr., 545 A.2d 1178 (1988). In *Wilson,* the Court discussed the Family Court's rule allowing the master to "set bail, determine and punish civil contempt, render and enforce judgments, including default judgments and assess fees and costs." *Wilson,* 545 A.2d at 1185, quoting Fam.Ct.Crim.R. 49, which is essentially duplicated by Fam.Ct.Civ.R. 53. The Court stated that the above powers were not conferred under the enabling statute, and that they could not be exercised by masters, who lack judicial authority. *Wilson,* 545 A.2d at 1185. "As the statute makes clear, the master's authority is limited to issuing written findings of fact and recommendations." *Id.* at 1184. The opinion also discusses the fact that under the Family Court rule, the "findings and recommendations of a master shall become the **judgment** of the court ... unless application for a review de novo has been made". Fam.Ct. Crim.R. 49 (emphasis added). The Court points out that under the enabling act, the recommendations "do not become judgments until *after* the review process has been satisfied," *Wilson,* 545 A.2d at 1186, quoting 10 *Del.C.* § 913(b), (c), and goes on to order the Family Court to modify its procedures to limit the masters' powers, and to "give particular attention to the need for affirmative judicial action, not

simply inaction, before recommendations of masters can become judgments of the court." *Id.,* at 1186.

The Supreme Court's holding in *Wilson* was reaffirmed in *Redden v. McGill,* Del. Supr., 549 A.2d 695 (1988). In *Redden,* the appellant sought review by the Supreme Court of a master's child support order entered by the Family Court without first applying for a review de novo by a Family Court judge. Although there had been no review de novo, the Chief Judge's "reviewed" stamp had been placed on the master's recommendation. In concluding that the Family Court's procedure was improper, the Court quoted *Wilson:*

> Simply stated, a master has no independent power of adjudication. In this respect a master's authority is comparable to that of a court-appointed referee whose limited role has been authoritatively described:
>
> > "Without confirmation and adoption by the court, the acts of the referee have no force or validity whatever, and nothing can terminate with or by his decision, the entire proceeding being an exercise of judicial power by the court."

*Wilson,* 545 A.2d at 1184, quoting 66 Am. Jur.2d, *References* § 1 (1973). The Court then holds that "[f]indings and recommendations of masters which have not been subject to meaningful judicial review, including approval or disapproval with the reasons therefore, are not deemed final judgments of the Family Court." *Redden,* 549 A.2d at 698.[2]

In consideration of the above Delaware precedent, our enabling statute, and Court rules, I must hold that the Special Discovery Master's decisions are recommendations which, absent the consent of the par-

ties, are subject to de novo review by the Court.

---

2. In response to the holdings in *Wilson* and *Redden,* the General Assembly enacted 10 Del.C. § 915, which became effective January 15, 1991. This statute enables the Governor to appoint Family Court Commissioners with the advice and consent of a majority of all members elected to the Senate. The many State Boards and Commissions which exercise discretionary authority are likewise subject to the appointment and confirmation process. *See e.g.* 4 *Del.C.* § 301(b) (Alcoholic Beverage Commission), 26 *Del.C.* § 103(a) (Public Service Commission), 19 *Del.C.* § 2101 (Industrial Accident Board).