**In re ASBESTOS LITIGATION.**

Superior Court of Delaware,
New Castle County.

Submitted: Aug. 3, 1992.
Decided: Aug. 7, 1992.

Mary Ann Matuszewski of Jacobs & Crumplar, P.A., Wilmington, for plaintiffs.

David H. Burt of Burt & Burt, Wilmington, for defendant Partek.

## OPINION

GEBELEIN, Judge.

Defendant OY Partek AB (hereinafter "Partek"), a Finnish corporation, filed a notice of exceptions to the Asbestos Master's final report granting plaintiffs' motion to compel production of documents from Partek which are located in Finland. The Master granted plaintiffs' motion despite Partek's contention that discovery of the documents should be taken pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters of 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, *reprinted at* 28 U.S.C. § 1781 notes ("Hague Convention"). For the reasons set forth below, the Court affirms that decision.

### Factual and Procedural Background

This is a personal injury action in which numerous plaintiffs allege injuries due, in part, to exposure to asbestos products sold by Partek and seek damages under theories of negligence and conspiracy. In the course of discovery, plaintiffs served upon Partek a set of interrogatories and a request for production of documents. The request for production seeks documents in connection with the Finnish Asbestos Information Group, a trade organization to which Partek belonged and which was active between 1972 and 1991. The plaintiffs believe that these documents may be relevant to their allegations of conspiracy. Partek responded to the interrogatories, but refused to comply with the request for production on the basis that it would produce documents only through discovery procedures pursuant to the Hague Convention.

Plaintiffs then served upon Partek a subpoena *duces tecum* and noticed the deposition of Partek's record keeper for Wilmington, Delaware. Partek moved for a protective order and plaintiffs moved to compel Partek's compliance with the request for production. The Master, after careful consideration of the briefs and the arguments of counsel, ruled by Draft Report that the Hague Convention procedures were not mandatory and that under the circumstances of this case, it was appropriate to require that the requested discovery take place without resort to Hague Convention procedures. Partek properly noted its exceptions to the Draft Report. Those exceptions were disallowed by the Master in the Final Report on June 1, 1992.

The Hague Convention prescribes certain procedures by which a judicial authority in one signatory state may request evidence located in another signatory state. The United States and Finland are both signatory states. The Convention was developed by the Hague Conference on Private International Law, an association of sovereign states, to combat the difficulties encountered by courts and lawyers in obtaining evidence from countries with "markedly different legal systems."

S.Exec.Doc.A, 92nd Cong., 2d Sess. p. v. (1972). The Hague Convention is not, however, the exclusive or mandatory method of obtaining such evidence. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct., S.D. Iowa,* 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987). It is clear that the Convention does not deprive a United States court of the power it otherwise possesses to order a foreign national subject to its jurisdiction to produce evidence physically located within a signatory nation. *Id.* at 539–540, 107 S.Ct. at 2553, 96 L.Ed.2d 461. The Master recognized this principle of law in granting the plaintiff's motion to compel.

Partek contends that the Master erred in granting plaintiffs' motion to compel because he failed to consider each of the three factors mentioned by the *Societe Nationale* court: (1) the particular facts of the case, (2) the sovereign interests involved, and (3) the likelihood that Hague Convention procedures will prove effective. Partek characterizes each of these factors as "mandatory" and contends that although the Master evaluated the second factor, he failed to adequately address the first and third factors.

### *Standard of Review of the Master's Decision*

■ In order to determine whether the Master's decision should be affirmed, the Court must first resolve the issue of the appropriate standard of review of such decisions. Two inconsistent standards have been articulated by members of the Court to date. Although each of the conflicting decisions has addressed the standard of review of decisions by Special Discovery Masters, such masters are appointed under the same authority as the Asbestos Master. Therefore the standard of review is identical. No standard of review was set forth in the enabling statute, 10 *Del. C.* § 567 or in the implementing Superior Court Civil Rules 113 *et seq.*

The Court has twice held that "[t]he Court may modify or set aside the ruling of the Special Discovery master only if the ruling is based on findings of fact that are clearly erroneous or if the ruling is contrary to law." *Monsanto Co. v. Aetna Casualty and Surety Co.,* Del.Super., C.A. No. 88C–JA–118, Poppiti, J. (Dec. 7, 1989) (Order at 2) ("*Monsanto*"), citing 28 U.S.C. § 636(b)(1)(A) (1976) on federal magistrate system; *National Union Fire Ins. Co. v. Stauffer Chem. Co.,* Del.Super., C.A. No. 87C–SE–11, 1990 WL 177572, Poppiti, J. (Nov. 9, 1990) (Order at 2) ("*National Union*"). This "clearly erroneous" standard continues to be applied in the *National Union* case. *National Union, et al. v. Rhone–Poulenc, et al.,* Del.Super., C.A. No. 87C–SE–11, Chandler, V.C. (Apr. 13, 1992).

In contrast, the Court held in *Playtex FP, Inc. v. Columbia Casualty Co.,* Del.Super., 609 A.2d 1083 (1991) ("*Playtex*"), that masters' decisions are merely recommendations subject to *de novo* review. Judge Del Pesco held that *de novo* review was necessary because of the language of the enabling statute and procedural rules and Delaware case law limiting the exercise of judicial authority to those who have been appointed by the Governor and confirmed by the Senate. *Playtex, supra* at 1086–1087, citing *Caulk v. Municipal Court for City of Wilmington,* Del. Supr., 243 A.2d 707 (1968); *A.L.W. v. J.H.W.,* Del.Supr., 416 A.2d 708 (1980); *State v. Wilson,* Del.Supr., 545 A.2d 1178 (1988); *Redden v. McGill,* Del.Supr., 549 A.2d 695 (1988).

This Court acts to clarify the role of the permanent master in asbestos litigation. Masters' decisions on pre-trial, non-dispositive issues should be reviewed under the clearly erroneous standard, while decisions which are case dispositive or which determine substantial issues and establish legal rights should be subject to *de novo* review.

■ Under Delaware law, the exercise of judicial authority is indeed limited to persons appointed by the Governor and confirmed by the Senate. See *Wilson, A.L.W., Caulk,* and *Redden, supra.* However, the pre-trial, non-dispositive decisions rendered by Masters do not represent the employment of judicial power. "Constitutionally, the essence of judicial power is the

final authority to render and enforce a judgment." *Lacy v. Green,* Del.Super., 428 A.2d 1171, 1178 (1981). "It is not enough to make a function judicial that it requires discretion, deliberation, thought and judgment." *Attorney General v. Johnson,* Ct.App., 282 Md. 274, 385 A.2d 57, 64 (1978) (quoting *Solvuca v. Ryan & Reilly Co.,* Ct.App., 131 Md. 265, 101 A. 710, 715 (1917)), *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), *disapproved of on other grounds, Newell v. Richards,* Ct.App., 323 Md. 717, 594 A.2d 1152, 1161 (1991).

■ Although actions which are preparatory to the rendition of a final judgment are frequently performed by judges, there is nothing in the Delaware Constitution or case law which requires them to do so. Decisions on pre-trial, non-dispositive matters are not exercises of judicial authority as defined by the Delaware Constitution and need not be performed by judges. Therefore, these actions may be performed by Masters and are entitled to the deference embodied in the clearly erroneous standard. Decisions which are case-dispositive are inherently judicial. Although such issues may be presented to a Master for decision, the litigants are entitled to *de novo* review by a duly appointed judge.

This bi-level standard of review serves the basic policy concerns underlying the creation of the master system. Masters are an extremely valuable addition to the overburdened judicial system to the extent that they handle matters which would otherwise be handled by judges. Unless masters' decisions are given substantial weight and deference, with regard to pretrial, non-dispositive issues, the master system will become a meaningless exercise in which the litigants warm up for "the real thing" before a judge. The restrictions on interlocutory appeals to the Supreme Court recognize a distinction between pre-trial, non-dispositive decisions on the one hand and case dispositive matters or those that decide substantial legal rights on the other hand. The Court rules recognize that the pace of litigation must be maintained by eliminating endless review of such non-dis-

positive matters. See Supr.Ct.R. 42. The distinction between dispositive and non-dispositive matters is equally sound in the context of the master system.

### Analysis of Partek's Exceptions

Since the master's decision in this case was related to discovery and was not case-dispositive, the Court must decide whether the decision was clearly erroneous. In *Societe Nationale,* the United States Supreme Court rejected the argument that the Hague Convention should always be utilized rather than the Federal Rules of Civil Procedure. The Supreme Court referred to specific factors in that case such as the intrusiveness of the discovery sought, special problems faced by the foreign litigant because of its nationality or the location of its operations, and sovereign interests expressed by the foreign state. The Supreme Court also noted five general factors which are relevant to any comity analysis: the importance of the evidence sought; the degree of specificity of the request; whether the information originated in the United States; the availability of alternate means of obtaining the evidence; and the competing interests of the sovereign states. *Id.* at n. 28. The Court declined

> to hold as a blanket matter that comity requires resort to Hague Evidence Convention procedures without prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective.

*Id.* at 544, 107 S.Ct. at 2556, 96 L.Ed.2d 461.

■ The Court rejects Partek's contention that the *Societe Nationale* factors are "mandatory." Nothing in the language of *Societe Nationale* supports Partek's reading of the case; indeed, the Supreme Court explicitly declined to "articulate specific rules to guide this delicate task of adjudication." *Id.* at 546, 107 S.Ct. at 2557, 96 L.Ed.2d 461. The factors enunciated by the Supreme Court do not represent minimal requirements for an analysis of whether the parties must proceed under the

Hague Convention or under the usual Rules of this Court. Nor do those three factors represent the entire universe of relevant considerations. The Court will be guided by the general principles of comity and the particular circumstances of each case. *See Benton Graphics v. Uddeholm Corp.,* 118 F.R.D. 386 (D.N.J.1987); *Haynes v. Kleinwefers,* 119 F.R.D. 335 (E.D.N.Y.1988); *Rich v. KIS California, Inc.,* 121 F.R.D. 254 (M.D.N.C.1988).

■ Partek offered the affidavit of Judge Ukko Kivi–Koskinen, retired, of the Finnish District Court. Judge Kivi–Koskinen explained that under Finnish law, it is the sole province of the judiciary to gather evidence in civil proceedings, in contrast to the American system in which the parties conduct discovery.[1] The judiciary can permit private evidence-gathering, but would regard any attempt by the parties to do so on their own initiative as an offense to the Court's jurisdiction. Judge Kivi–Koskinen stated that the Finnish government perceives an important sovereign interest in the regulation of the taking of evidence in Finland and regards the Hague Convention procedures as the proper means of taking evidence in Finland by foreign litigants. Judge Kivi–Koskinen concluded that "the Courts of Finland would regard the mandatory taking of evidence against persons and documents in Finland, pursuant to the Order of a foreign Court, as the performance of a public judicial act by an unauthorized foreign person, and therefore an offense to Finland's judicial sovereignty." (Affidavit of Judge Kivi–Koskinen, Ret., April 2, 1992).

■ The fact that a foreign government might regard discovery outside the Hague Convention procedures as an affront is not, however, dispositive; the Court can envision circumstances under which the sovereign interests of a foreign country might be disregarded because of competing interests. For example, if a foreign country forbids discovery of a type which is permitted in the U.S., or if there is reason to expect less than full cooperation from that country, use of Hague Convention procedures might be inappropriate. The sovereign interests of foreign governments are important but not overriding considerations. The Master expressly considered the sovereignty factor and rejected Hague Convention procedures in favor of the more expedient and more thorough discovery permitted by American procedures. The Master's decision to order discovery outside of the Hague Convention is not clearly erroneous in its factual findings nor is it contrary to the law as set forth in *Societe Nationale.* The requested discovery shall proceed as directed by the Master in the Final Report.

---

1. Although, as the Master noted, discovery disputes so frequently require judicial intervention that the Finnish system does not seem so different, in practice, from the American system.